**Alicia CABAN–WHEELER,**
**Plaintiff–Appellant,**

v.

**William ELSEA, M.D., Fulton County Health Department, et al., Fulton County Personnel Board, Dr. Robert H. Brisbane, Ellinor Dye, Herbert Mabry and Charles Cherry, Defendants–Appellees.**

**No. 89–8345.**

United States Court of Appeals,
Eleventh Circuit.

July 10, 1990.

John C. Butters, Atlanta, Ga., for plaintiff-appellant.

P. Andrew Patterson, Asst. Fulton County Atty., Atlanta, Ga., for defendants-appellees.

Before FAY, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

PITTMAN, Senior District Judge:

Dr. Alicia Caban–Wheeler, a Hispanic female, appeals from the judgment of the district court adopting the Special Master's Report and Recommendation. The magistrate found that the plaintiff had failed to make out a case of discrimination based on her national origin or race under Title VII of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e *et seq.* or 42 U.S.C. § 1983, and recommended that judgment

be entered for the defendants. We reverse and remand.

*Facts and Procedural History*

Plaintiff is a white Hispanic female with an undergraduate degree in Psychology and a Master's degree in Administration from Georgia State College, and a Doctorate in Administration Planning and Social Policy from Harvard. She was employed by the Fulton County Health Department as a Child Development Specialist beginning September, 1983, and was terminated on October 22, 1984, by the Commissioner of the Fulton County Health Department effective October 26, 1984. Plaintiff was hired to develop the parent-infant intervention project (hereinafter PIIP). PIIP had a goal of reaching out to and educating indigent mothers about pregnancy and infant care, so as to reduce the high incidence of infant mortality and abuse in Fulton County.

When plaintiff began working with the project, there were no educational materials for use and no training staff for use in educating indigent mothers involved in the program. No physical facilities had been designated or designed for implementation of the project and plaintiff was not informed of any budget for the project.

Plaintiff worked extensively getting the PIIP off the ground. She traveled in her own car to over twenty-five health facilities spread throughout Fulton County to introduce herself to directors of the facilities. Plaintiff recruited various staff people at centers to volunteer their time. She also recruited students from local colleges and acting groups as volunteers for the project.

Plaintiff found physical space at the centers for presentation of the program to the mothers. Plaintiff also developed thirteen video tape vignettes to present to the mothers involved in the project. Plaintiff had no formal training in making vignettes, yet she wrote the scripts, found the actors, made the video tapes, edited and produced these vignettes. Plaintiff's co-workers

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

found that these vignettes were excellent. The vignettes are still in use today.

Throughout her employment, plaintiff worked under severe budgetary restrictions and had difficulty obtaining even $150.00 worth of supplies and materials needed for her project. She was never advised of the $40,000.00 allocated to the project. To the contrary, the bulk of the money was spent on the consulting fees to an outside black consultant rather than on the project.

In March of 1984, after plaintiff had been employed for six months, based upon the recommendation of Dr. Painter, plaintiff became a merit employee under the merit system that by law governs county employees. O.C.G.A. § 45–20–2. Obviously, her work had been outstanding.

When plaintiff was initially hired, she was responsible to Dr. Lloyd Baccus and Dr. LaVonne Painter. On May 14, 1984, plaintiff's supervisor was changed when Dr. Baccus was leaving employment with the county. Mr. Ricks, a black male, assigned Melba Hill, a black female, to be plaintiff's supervisor. Melba Hill, a registered nurse, was Clinical Program Coordinator in the Division of Physical Health, Fulton County Health Department.

On June 28, 1984, one and one-half months after Hill became her supervisor, Melba Hill cited plaintiff for insubordination for numerous alleged violations, none of which had been cited in the previous seven and one-half months under another supervisor. According to Hill, plaintiff failed to place training materials in a classroom for an in-service training session held on June 27, 1984. Hill also noted that plaintiff failed to notify trainees of the change in the location of the session, and failed to attend the in-service training as directed. Hill further noted that plaintiff

had not signed up clients for the group project. It was later determined that several of the charges by Hill were false. The plaintiff had photocopied the materials and placed them in the training room and it was not the plaintiff's specific responsibility to notify trainees of the change in location of the session or provide the video tapes to Dr. Spencer.

Plaintiff was suspended for three days without pay by Dr. William Elsea on July 30, 1984, pursuant to Personnel Regulations 1800, Art. 11, Insubordination, Section B, Failure to Carry Orders, Failure or Excessive Delay in Carrying Out Work Assignments or Specific Instructions of Supervisors. According to the suspension memo, plaintiff allegedly failed to sign up twenty clients for the PIIP start-up date as she had been directed, failed to complete the job description by the date assigned by her supervisor, and failed to improve her conduct in dealing with the project consultants.

Plaintiff appealed her suspension to the Fulton County Personnel Board, and a hearing was held before the board on October 17, 1994. Plaintiff's cross-examination of Melba Hill and Dr. Spencer during the hearing was erased from the cassette tape recorder by Mr. Charles Cherry, County Personnel Director. It was later determined that in all of the years of Mr. Cherry's operating the tape recorder at personnel hearings, this was the first time that he had accidentally erased any portion of testimony.

On October 22, 1984, although it was later determined some of the June 28, 1984, charges were false, plaintiff was again cited by her supervisor Melba Hill and recommended for termination, citing seven grounds.[1] Plaintiff appealed her dismissal

---

1. Melba Hill gave the following reasons for termination:

　　(1) Failure to turn in a monthly calendar of activities and leaving the office and not making notation on the calendar where she would be;

　　(2) Failure to implement a performance appraisal instrument for the mental health assistant;

　　(3) Failure to clarify the work responsibilities of Mr. Hammond;

　　(4) Excessive mileage for September 1984 (849 miles). Areas documented on the mileage reports were not noted on calendar or discussed with the supervisor before participation in the activities;

　　(5) Failure to carry out home visits and follow up on clients who failed to show for group sessions and failure to sign up new clients to attend the clinics;

on October 23, 1984, to the Fulton County Personnel Board. During a pre-hearing meeting, the county filed a motion to quash the subpoenas for seven of plaintiff's witnesses on the ground that they had no relevant testimony, and that several were not within the jurisdiction of the board for subpoenaing purposes. The personnel director granted the motion to quash. After a hearing, the Personnel Board upheld the termination of plaintiff. The plaintiff was replaced by a black female who was subsequently promoted and she was replaced by another black female. Plaintiff subsequently filed a claim of discrimination with the Equal Employment Opportunity Commission (EEOC), which later determined that the evidence indicated that there was no cause to believe that plaintiff's charges were true.

The magistrate, utilizing the *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) test, found that plaintiff had established a prima facie case of discrimination, and that the defendant had presented legitimate, non-discriminatory reasons for plaintiff's termination. The magistrate also found, contrary to Melba Hill's June 28, 1984, memo which resulted in a suspension, plaintiff had in fact photocopied the materials and placed them in the training room. The magistrate further found that it was not plaintiff's specific responsibility to notify trainees of the change in location of training sessions or to provide video tapes to Dr. Spencer. The magistrate, although determining that plaintiff had succeeded in proving that several of the reasons articulated by the defendants in their reprimand letters were apparently pretextual, that is, "not totally grounded in truth," concluded that the plaintiff had failed on two of the seven charges[2] to carry her burden of persuasion to show that other good reasons for her termination were pretextual; namely, insubordination and failure to follow

(6) Failure to follow the directions of her supervisors when she continued to spend her time at the video studio editing and video taping when she was instructed not to; and
(7) Failure to reschedule meetings with her supervisors following cancellations.

instructions, to wit: that the plaintiff had not ceased video taping (but her successor continued the taping) and had failed to sign up twenty persons for the project within the time frame in which she had been instructed.

In regards to plaintiff's § 1983 claim, the magistrate determined that the plaintiff failed to fully make out a case of violation of her rights under 42 U.S.C. § 1983. The magistrate found that plaintiff was not deprived of any constitutional due process rights. The magistrate determined that although the defendant had caused certain of plaintiff's subpoenas to be quashed based on erroneous information, those witnesses were not material. With regard to the erasure of the tape of plaintiff's cross-examination of Melba Hill and Dr. Spencer, the magistrate found that in all of Mr. Cherry's years of operating the tape recorder at personnel hearings, this was the first time that he had accidentally erased any portion of testimony. The magistrate concluded that despite the erasure, plaintiff was afforded an opportunity to re-examine Dr. Spencer and Ms. Hill when it became apparent that the testimony had been erased. The magistrate further determined that plaintiff's superiors followed the disciplinary guidelines, and concluded that plaintiff's due process rights were not denied. Accordingly, the magistrate recommended that judgment be entered in favor of the defendants. The plaintiff filed objections to the magistrate's recommendation. The district court overruled plaintiff's objections and adopted the magistrate's findings. Judgment was entered in favor of the defendants. Plaintiff then instituted this appeal.

The plaintiff argues that the district court erred in failing to recognize that this was both a pretextual and mixed motive case, and by improperly requiring her to prove a "but for" standard of causation. The plaintiff also argues that the district

2. There were seven charges made before the Personnel Board which resulted in plaintiff's termination.

court erred in finding legitimate non-pretextual reasons for her termination. Additionally, plaintiff argues that the court erred in finding that the wrongful quashing of her subpoenas did not violate her due process rights because the witnesses were non-material. Plaintiff also contends that the court erred in not finding that she was denied constitutional due process in violation of 42 U.S.C. § 1983 when she was did not receive a pre-termination hearing before being deprived of a property right, her job. Finally, plaintiff argues that the court erred in failing to find that her termination for bad or arbitrary reasons constituted a denial of substantive due process in violation of 42 U.S.C. § 1983.

*Title VII Claim*

■ This is a disparate treatment case. Plaintiff claims that she was wrongfully terminated because of her race and/or national origin. The district court examined plaintiff's claim of discrimination in accordance with the legal standards set in *McDonnell–Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell–Douglas,* as explained by the Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a plaintiff has the initial burden of establishing a prima facie case of racial discrimination by a preponderance of the evidence, *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94, which once established raises a presumption that the defendant racially discriminated against the plaintiff. *Id.* at 254, 101 S.Ct. at 1094. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the defendant discriminated against the plaintiff. This may be done by the defendant articulating a "legitimate, non-discriminatory reason" for its actions against the plaintiff, a reason which is "clear and worthy of credence." *Id.* at 253, 258, 101 S.Ct. at 1093, 1096. The defendant has the burden of production, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *Id.* at 254, 101 S.Ct. at 1094. Once the defendant

satisfies this burden of production, the plaintiff then has the burden of persuading a court that the proffered reason for the employment decision is a pretext for discrimination. The plaintiff may satisfy this burden by persuading the court either directly that a racially discriminatory reason more than likely motivated the defendant or indirectly that the proffered reason for the discharge is not worthy of belief. *Id.* at 256, 101 S.Ct. at 1095. By so persuading the court, the plaintiff satisfies the required ultimate burden of demonstrating by a preponderance of the evidence that he or she has been the victim of intentional racial discrimination. *Id.*

■ When an employee presents direct evidence of the employer's discriminatory motive, the *McDonnell–Douglas* framework is substantially altered. *Jones v. Gerwens,* 874 F.2d 1534, 1539, n. 8 (11th Cir.1989). In such a case, the employer bears more than a mere burden of production of a legitimate reason for the decision; the employer bears the burden of proving by a preponderance of the evidence that it would have made the same decision even if it had not used the proscribed criteria. *See Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring in the judgment) ("in order to justify shifting the burden on the issue of causation to the defendant, a disparate treatment plaintiff must show by direct evidence that an illegitimate criterion was a substantial factor in the decision.... Where a disparate treatment plaintiff has made such a showing, the burden then rests with the employer to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor."); *Jones v. Gerwens,* 874 F.2d at 1539, n. 8.; *Dunning v. National Industries, Inc.,* 720 F.Supp. 924, 929 n. 6 (M.D.Ala.1989). *But cf. Price Waterhouse,* —— U.S. at ——, 109 S.Ct. at 1791 (plurality opinion) ("When a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponder-

ance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.").

■■■ In the case *sub judice,* plaintiff argues that after finding that some of the defendants' proffered reasons were pretextual, illegitimate, and others were legitimate, the court erred in not shifting the burden of proof onto the defendants. According to plaintiff, at this point the defendants should have been required to prove that the same decision would have been made even if the pretextual reasons had not been utilized. The plaintiff is mistaken. It appears that the *McDonnell–Douglas* analysis is only altered after the plaintiff presents direct evidence of discrimination. Although the question of whether a plaintiff has presented direct evidence is not always entirely clear, direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. *See Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533, 1539 (11th Cir.1988); *Thompkins v. Morris Brown College,* 752 F.2d 558, 563 (11th Cir.1985); *Dunning v. National Industries, Inc.,* 720 F.Supp. at 929 n. 6. During the trial of this case, plaintiff testified that defendant Ricks told her that the PIIP program needed a black director. This constitutes direct evidence of discrimination which the court must address because it could necessitate the burden of proof being shifted to the defendant to show that the same decision would have been made even if the prohibited criteria had not been used. In *Thompkins v. Morris Brown College,* a disparate treatment case in which the plaintiff alleged sex discrimination, the plaintiff argued that two statements allegedly made by the defendants constituted direct evidence of discriminatory intent.[3] *Thompkins,* 752 F.2d

at 559. This court found that the trial court had erred in applying the *McDonnell–Douglas* test without reference to plaintiff's proffered direct evidence. In reversing the trial court, we stated that "Where direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination." *See Thompkins* at 564. The court below did not make any reference to this direct evidence. The case must be remanded.

■■ Plaintiff next argues that the district court erred in finding that the defendant proffered legitimate, non-discriminatory reasons for plaintiff's termination. Intentional discrimination is a question of fact. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). A finding of intentional discrimination may be reversed only if it is clearly erroneous. *Lincoln v. Board of Regents,* 697 F.2d 928, 940 (11th Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102. "The clearly erroneous standard requires substantial deference to the findings of the district court, but [o]ur deference to the district court is not unlimited ... and we will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it." *Id.* at 939; *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984).

The magistrate concluded that the plaintiff failed to show that the defendants' reasons for terminating her, namely insubordination and failure to follow instructions, were pretextual. According to the magistrate, plaintiff failed to show that she had ceased video taping and had begun to concentrate on other aspects of the program as instructed, and also failed to show that she had signed up twenty clients as instructed. At trial, plaintiff submitted a

**3.** In Thompkins, plaintiff alleged that she was discriminated against because of her sex in that she was not permitted to work both full time at defendant college and full time outside as had her male predecessor, nor was she permitted to work full time outside of defendant college while maintaining part-time employment at defendant college as did some of the male instruc-

tors. Plaintiff alleged that the president of the defendant college allegedly said that he saw no reason for a woman to have a second job. Also, the vice president of academic affairs of defendant college stated that the reason plaintiff could not have four classes in the afternoon like the men was because those males had families and needs that the plaintiff did not have.

sample listing of persons ready to participate at one of the centers, and testified that she could have easily signed up twenty persons as soon as the facility was ready. Plaintiff stated that there was no need to have mothers sign agreements to participate if the delay in the facility would mean that those enrolled would no longer be pregnant, and thus ineligible to participate when the facility was finally complete. The magistrate's recommendation does not indicate what impact, if any, this seemingly plausible explanation had on its findings.

Moreover, the court failed to address plaintiff's contention that her supervisor, Melba Hill, tried to create evidence of progressive discipline by, for instance, creating a memo dated July 6, 1984. The memo, which is dated July 6, 1984, refers to a meeting allegedly held between plaintiff and Hill on July 7, 1984, at which time specific tasks to be completed by plaintiff were discussed. Plaintiff states that she received this memo on July 30, 1984, the same time that she received her suspension memo. The magistrate did not address the issue of whether Hill fabricated the memo to support plaintiff's suspension, despite the fact that he found other charges by Hill "not totally grounded in truth." If the memo was fabricated, this would provide pivotal evidence on the issue of intent, and could very well affect the ultimate finding on the question of discrimination.

Finally, the court finds it a bit ironic that plaintiff's termination came a mere five days following the hearing at which plaintiff appealed her suspension. This is especially true in light of the fact that plaintiff's cross-examination of two of the key players in her suspension, and eventual termination, at the hearing was mysteriously erased. The plaintiff challenged this finding. She claims Hill changed her testimony from that on the tape when she was re-examined. The findings of the trial court after a retrial should be sufficiently detailed so as to give an appellate court a clear understanding of the analytical process by which ultimate findings were reached. *See Self v. Great Lakes Dredge & Dock Co.* 832 F.2d 1540, 1549 (11th Cir. 1987). Because the magistrate failed to make findings on those issues heretofore identified, this case must be remanded.

*Section 1983 Claims*

■ Plaintiff argues that the court erred in not finding that she was terminated for arbitrary and bad reasons in violation of § 1983. The magistrate correctly determined that plaintiff, an employee under the merit system, showed that she had a property interest in her employment with the county, and therefore it was necessary to determine whether the deprivation of her property interest was for an improper motive, and by means that were pretextual, arbitrary and capricious, which constituted a substantive due process violation. *Barnett v. Housing Authority of the City of Atlanta,* 707 F.2d 1571 (11th Cir.1983). Since this case is being remanded for a retrial, we remand this issue for a determination of whether, in light of facts adduced on the retrial, there was a violation of plaintiff's substantive due process rights.

■ Plaintiff also argues that the trial court erred in finding that her procedural due process rights were not violated when the personnel director quashed her subpoenas based upon incorrect information supplied by the defendants' counsel. The magistrate determined that despite the wrongful quashing of plaintiff's subpoenas, she was still allowed to examine and cross-examine the key players at her termination hearing. The magistrate concluded that those witnesses whose subpoenas were quashed were not material witnesses; thus plaintiff's procedural due process rights were not violated. The essence of due process is "notice and [an] opportunity for [a] hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Ordinarily, the right to present evidence is basic to a fair hearing." *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Indeed, the right to present witnesses and documentary evidence is "[c]hief among the due process minima," *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). How-

ever, this right is not unbridled, but is circumscribed by the necessary discretion to keep the hearing within reasonable limits. *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979.

In the termination hearing, the personnel director granted the defendants' motion to quash certain of plaintiff's witnesses based upon incorrect information provided by defendants' counsel. Plaintiff claims that three of these witnesses could have provided testimony which would have seriously challenged the credibility of Melba Hill, plaintiff's supervisor. At trial, Ms. New and Ms. Osterman, the secretaries in plaintiff's office area, testified by deposition that the plaintiff always kept them informed of her whereabouts when she left the office. According to plaintiff, Mr. Peter Kent could have provided testimony regarding her extensive travels to get the facilities ready. The magistrate determined that these were not material witnesses in that the charges lodged against plaintiff were that she failed to prepare a monthly calendar of her activities, and that she turned in gas mileage reports which included visits to areas which had not been cleared with her supervisor.

While this court cannot conclude that the magistrate's findings regarding the wrongful quashing of plaintiff's subpoena were clearly erroneous, the wrongful quashing of plaintiff's subpoena constitutes material evidence in support of plaintiff's claim that the defendants were out to get her, and terminated her for improper reasons, namely discrimination on the Title VII and the § 1983 substantive due process claims. Moreover, the court notes that when all of the facts in this case are examined, including those leading up to plaintiff's suspension and termination, the infractions complained of may have been justifiable and excusable. For instance, the magistrate found the plaintiff was guilty of failure to follow instructions by failing to cease video taping when instructed to stop; however, her successor continued those tapings because they were necessary.

The district court should further determine if this dispute arises out of a clash of personalities between two or more persons of different ethnic minority groups with competing interests. It should further determine if this motivated her superior(s) to treat the plaintiff unfairly and prejudicially. Is this a situation where a person(s) of a historically ethnic minority in a supervisory capacity oppresses a person of another ethnic minority?

Plaintiff's final two arguments are that the magistrate erred in not severing her § 1983 claim for a trial before a jury, and in not finding that plaintiff was denied procedural due process when she was not afforded a pretermination hearing prior to being deprived of a property right, her job. The defendants argue that this court should refuse to pass on these issues because they were not raised before the court below.

An appellate court generally will not consider a legal issue or theory unless it was presented to the trial court. *Roofing & Sheet Metal Service v. La Quinta Motor Inns,* 689 F.2d 982, 989 (11th Cir.1985). The decision whether to consider an argument first made on appeal, however, is left primarily to the discretion of the courts of appeals, to be exercised on the facts of the individual cases. *Id.* In the exercise of that discretion, appellate courts may pass on issues not raised below if the ends of justice will best be served by doing so. Specifically, the court will consider an issue not raised below in the district court if it involves a pure question of law, and refusal to consider it would result in a miscarriage of justice. *Id.*

This court need not pass on plaintiff's claim that the trial court erred in trying her § 1983 claim without a jury, since this case is being remanded for retrial on other issues. On remand, the trial court is instructed to determine the validity of plaintiff's jury claim.

In regard to plaintiff's procedural due process argument, there is nothing in plaintiff's complaint or amended complaint that can be construed as asserting that the defendants failed to provide plaintiff with a pretermination hearing in violation of her due process rights. In her pretrial document, plaintiff asserts that she did not receive adequate notice of the charges against her prior to her suspension and

termination; however, this is different from an allegation that she was denied a pretermination hearing. There is an assertion in plaintiff's proposed conclusions of law to the effect that she was denied due process because she was not afforded a pretermination hearing. It is not clear, however, that the magistrate understood plaintiff to be arguing that this alleged omission constituted a violation of her due process rights. However, there is no reason why plaintiff should not be allowed to clearly raise this issue on remand before the trial court, which can decide this issue on the facts and law.

*In Summary*

The case is remanded. The numerous suspicious discriminatory circumstances in this case demand a retrial and re-examination of all issues.

First, the district court should determine if the plaintiff properly demanded a jury trial, and, if so, grant a jury trial on the § 1983 issues.

The district court should retry the non-jury issues as a pretextual or, probably, a mixed motive case, and make complete analytical findings, including those it failed to make after the first trial.

REVERSED and REMANDED.