**Judy L. FAVORS**

v.

**MAQ MANAGEMENT CORP. and Walden Woods Apartments.**

**Civ. No. 1:90–cv–493–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 12, 1990.

Bensonetta Tipton Lane, Atlanta, Ga., for plaintiff.

Charles V. Choyce and Bryant Killian Smith, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This employment discrimination case is before the court on Defendants' objections to the Magistrate's Report and Recommendation. The court incorporates herein by reference the facts of the case as set forth in the Report.

The Magistrate concluded that material issues of fact remain on all three of Plaintiff's discrimination claims. He therefore recommended denying Defendants' motion for summary judgment.

Defendants argue that they have shown that they had a legitimate, non-discriminatory reason for not hiring Plaintiff. They say that their refusing to hire Plaintiff arose from her lack of qualifications for the job of Leasing Consultant. As regards the Fair Housing Act claim under 42 U.S.C. § 3606, Defendants contend that the statute does not extend its protections to the hiring process.

The critical inquiry in a discrimination case is whether there is discriminatory intent on the part of the Defendant. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987). The *McDonnell Douglas* test does not prescribe a rigid order of proof, but instead allows for an orderly presentation of proof in cases where direct evidence of discrimination is lacking. *Id.; see, Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir.1988).

Here, as the Magistrate points out, Plaintiff presents direct evidence of discriminatory intent with the testimony of Jennings. Jennings testified that her superiors at MAQ informed her of a company policy to exclude blacks from positions where they might lease property to other blacks. That

direct evidence forms Plaintiff's prima facie case and gives rise to an inference of discrimination. *Hill*, 841 F.2d at 1539. The more difficult aspects of this case are the next legal standards to be met. If Plaintiff's direct evidence is credible, then the burden of persuasion shifts to Defendants to show, by a preponderance of the evidence, a legitimate, non-discriminatory reason for their hiring decision. *Id.*

The Magistrate determined that the testimony and affidavits of Jennings raise questions of fact regarding discriminatory intent. This court agrees. Jennings' deposition testimony is credible, and in her deposition testimony she offers an explanation as to why her affidavits might contain inconsistencies. Defendants thus have the burden of showing by a preponderance of the evidence that their refusal to hire Plaintiff was based on legitimate concerns about her lack of experience. Examining the ambiguous classified advertisement and other testimonial evidence, the Magistrate concluded that credibility determinations by the finder of fact are necessary to reach a decision as to the probativeness of Defendants' evidence. Again, this court agrees.

The record in this case evenly supports both parties' contentions. There is evidence of discriminatory intent, but there are also thorny questions surrounding the issue of job qualifications. Defendants only offered second interviews or the job itself to persons with experience in property leasing; but Defendants did not advertise such experience as mandatory, only as "preferred." The rejection of Plaintiff is consistent with either discrimination or lack of leasing experience. Then there is the fact that, having failed to reach the second-interview stage with the first two candidates, Defendants did not hire a person for the open position until after Plaintiff had filed a charge of discrimination with the Equal Employment Opportunity Commission. They then hired a member of a minority, but not a member of the minority at which Terri Evans and Vince Murphy allegedly directed discriminatory remarks. The person ultimately hired was not a member of the original pool of interviewees. All of this is highly suggestive of discrimination or not depending on the credibility of the witnesses. It is worth mentioning that the Jennings' testimony contains damaging hearsay concerning remarks made by Terri Evans and Vince Murphy: presumably, a trial on the merits would produce direct testimony by these persons. Such testimony will be critical in determining whether discriminatory intent is present in this case.

The Magistrate concluded that summary judgment was inappropriate in this case because much is unclear from the record alone. This court concurs in that assessment.

As regards Defendants' objection that 42 U.S.C. § 3606 does not extend to hiring, Defendant offers no legal authority in support of this position. Nor does the court find relevant caselaw interpreting the provision. This is probably attributable to a general neglect of the Fair Housing Act which may have arisen from the Act's formerly mandatory regime for the administrative handling of claims in the first instance. *See,* H.R. No. 711, 100th Cong., 2d Sess., *reprinted in,* 1988 U.S.Code Cong. & Admin.News 2173, 2174–78. Though § 3606 itself came in for little change in the 1988 amendments to the Fair Housing Act, an aggrieved person may now resort to suit in United States District Court in the first instance to enforce it. 42 U.S.C. § 3613 (Supp.1990). Section 3606 reads:

> [I]t shall be unlawful to deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership, or participation, on account of race, color, religion, sex, handicap, familial status, or national origin.

Defendants urge that applying for a job does not equate to "access to or membership or participation" in one of the listed entities. They argue that Title VII explicitly reaches hiring and that Congress did not intend for the Fair Housing Act to cover discriminatory hiring.

Defendants' construction unduly narrows the facially broad language of the statute. To "deny participation" in a "facility relating to the business of renting dwellings" implies denying employment. Otherwise, one would be looking for other forms of participation in a business besides employment. Do Defendants mean to say that, for instance, volunteers or stockholders in such a business are given protection but not employees? This makes little sense. With the 1988 amendments to the Fair Housing Act, Congress intended to improve private persons' ability to enforce the anti-discriminatory proscriptions contained in the statute. *See*, H.R. No. 711, cited *supra*. Plaintiff herein alleges a kind of "back door" discrimination wherein Defendants would not necessarily deny housing outright to blacks, but would instead hire only white leasing personnel. Under such a scheme, Defendants would presumably hope that white leasing agents would be more wary of renting to blacks than would black leasing agents. With such a scheme, Defendants could avoid the anti-discriminatory leasing provisions of 42 U.S.C. § 3604.

This court declines to torture § 3606 into allowing such a scheme that so undermines the purposes of the Fair Housing Act. There is no reason to assume that Congress did not intend to reach hiring in the housing sector because of the existence of Title VII. *See, Mason v. Twenty–Sixth Judicial District of Kansas*, 670 F.Supp. 1528, 1533 (D.Kan.1987) (exemplar and discussion). The allegations made by Plaintiff reach into the heart of the Fair Housing Act. Given the broad language of § 3606, the anti-discriminatory aims of the Act, and the nature of the "back door" scheme alleged herein, the court concludes that the Magistrate appropriately recommended that Plaintiff prevail against the summary judgment challenge to her § 3606 claim.[1]

Accordingly, the Report and Recommendation of the Magistrate is ADOPTED as the opinion of the court. Defendants' motion for summary judgment is DENIED.

SO ORDERED.

## MAGISTRATE'S REPORT AND RECOMMENDATION

JOHN E. DOUGHERTY, United States Magistrate Judge.

Plaintiff brings this action for an alleged violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* for an alleged violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and for an alleged violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* Plaintiff, a black female, alleges that defendants discriminated against her because of her race. Specifically, plaintiff contends defendants improperly refused to hire her for a leasing consultant position. Defendants have filed a counterclaim, arguing that plaintiff should have known there is no basis for her claim and therefore seeking sanctions under Rule 11 of the Federal Rules of Civil Procedure. The case is currently before the magistrate on defendants' Motion for Summary Judgment.

Defendant has moved for summary judgment, arguing that plaintiff has failed to present a *prima facie* case and to establish a case of discriminatory failure to hire. Furthermore, defendants have articulated a legitimate, nondiscriminatory reason for their decision not to hire plaintiff as a leasing consultant, which reason they argue cannot be shown to be a pretext for race discrimination. Finally, defendants assert that plaintiff's alleged claims are based totally on now-retracted hearsay. According to defendants, plaintiff's failure to make out a case under Title VII also defeats her claims under Section 1981 and the Fair Housing Act.

The following material facts are undisputed:

---

1. The Magistrate addresses and rejects other similar arguments made by Defendants challenging the availability of 42 U.S.C. § 3606 but not specifically raised in their objections to the Report.

(1) M.A.Q. Management Corp. (MAQ) is engaged primarily in the business of managing and leasing residential apartment projects.

(2) MAQ is a party to a management agreement with M.A.Q.–Walden Woods Associates, L.P., the owner of a multi-unit apartment complex located at 4236 Austell Road, Austell, Georgia.

(3) In February, 1989, the property manager for MAQ at the Walden Woods Apartments was Terri Evans, who was responsible for hiring employees to work at the apartment complex, including any "leasing agents" or "leasing consultants."

(4) In early February, 1989, MAQ advertised in the Atlanta newspapers an opening for a "leasing consultant." The advertisement read as follows:

LEASING CONSULTANT

Full-time leasing consultant needed for luxury Apt. complex. Experience preferred, Sal plus Comm. Call 948–5883.

(5) Applicants for the "leasing consultant" position were required to fill out a written application and were initially interviewed by Melinda Jennings, Jeannie Mercer or other leasing consultants with MAQ. The applications would then be given to Ms. Evans, who would determine which applicants she would call back for a second interview.

(6) On February 17, 1989, plaintiff Judy Favors, a black female, applied for the position of leasing consultant in response to the newspaper advertisement.

(7) Ms. Favors' written application indicated that she had a high school diploma, and that she had studied modeling and television commercials for six months at Photogenics Studios, a six-month trade school.

(8) Prior to applying for the leasing consultant position with MAQ, Ms. Favors' past employment experience consisted of the following:

(i) December 1988 through March 1989—Customer Service Representative at Westcraft Quality Mill taking telephone orders for doors, windows, and related household items;

(ii) September 1988 through December 1988—Secretary at Cole Electric Company, answering phones, preparing time records for payroll, and greeting clients picking up merchandise;

(iii) March 1986 through February 1988—Lockheed Corporation Chemical Mill masker;

(iv) February 1985—March 1986—Ticor Realty Company—performing typing, filing and phone work;

(v) Arrow Shirt Company—parts packer;

(vi) Coats & Clark—thread mill machine operator;

(vii) Part-time position for a time-share company.

(9) Ms. Favors was interviewed by Melinda Jennings, an employee of MAQ. During the interview, Ms. Jennings asked Ms. Favors whether she had ever been employed "on property" as a leasing agent/consultant and Ms. Favors told her that she had never worked on property before.

(10) Ms. Favors was advised by Ms. Jennings that if she was to be considered further she would be called back for a second interview.

(11) Fifteen applicants, including Ms. Favors, submitted written applications for the position of leasing consultant. None of the written applications indicated the race of the applicant. Of those 15 applicants, Ms. Evans determined that two applicants merited a second interview. One of these applicants allegedly had four years' experience as a leasing manager for Johnstown American Companies. The other applicant had over four years' experience in leasing and apartment management. Neither of these applicants was given a second interview, one due to poor or non-existent references; the other applicant never called back.

(12) Ms. Melinda Jennings was terminated as an employee of MAQ effective February 24, 1989.

(13) Following her termination as a MAQ employee, Ms. Jennings contacted Ms. Favors and advised her that MAQ, through its manager, Vince Murphy, had a policy of discriminating against blacks. Ms. Jen-

nings further offered to and did provide to Ms. Favors a written statement which implicated MAQ in a practice of blatant discrimination for use in filing a charge with the Equal Employment Opportunity Commission (EEOC).

(14) Ms. Favors filed a charge with the EEOC on March 3, 1989.

(15) Subsequently, a month after plaintiff had filed a charge of race discrimination with the EEOC, MAQ received an application from Ms. Millie Chirinos, an Hispanic female with over four years' experience in apartment leasing and management. Ms. Chirinos was hired by MAQ for the position of leasing consultant, and Ms. Chirinos started work on April 3, 1989.

### Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment may be granted only if there is no issue as to any material fact and the law favors the moving party. Although summary judgment motions may be granted in Title VII cases, and often are, such cases raise the issue of discriminatory intent which may be difficult to discern from affidavits. *Thornbrough v. Columbus & Greenville Railroad Co.*, 760 F.2d 633 (5th Cir.1985); *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). The plaintiff need not prove a *prima facie* case at summary judgment stage; rather, she need only demonstrate that there are material issues of fact as to the existence of a *prima facie* case to defeat defendant's motions. The factfinder should accept the truth of plaintiff's testimony; however, summary judgment should be entered if plaintiff fails to make a sufficient showing of an essential element to her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Plaintiff's Title VII Claim

■ To establish a *prima facie* case in most failure-to-hire situations, plaintiff must establish (1) that she belongs to a protected class, (2) that she applied for and was qualified for a job for which the employer was seeking applicants, (3) that despite her qualifications, she was rejected,

and (4) that after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). According to defendants, plaintiff has failed to establish a *prima facie* case in that she can show neither that she was qualified for the job nor that, after her rejection, defendants continued to seek applicants of her qualifications. Accordingly, defendants submit that summary judgment on plaintiff's claims of race discrimination is appropriate.

Where there is direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude, however, plaintiff may establish a *prima facie* case by presenting such direct evidence. *Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d 1533, 1539 (11th Cir. 1988); *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1557 (11th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). *See, also, Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). As plaintiff notes, she has set forth direct evidence of discrimination. Melinda Jennings, the employee who interviewed plaintiff for the leasing consultant position plaintiff sought, testified that Terri Evans, Property Manager of Walden Woods Apartments, informed Jennings that she was to interview the black applicants, explaining that Vince Murphy, M.A.Q. Management's Vice–President, "did not wish to hire a black leasing agent; that he felt that if you hired a black leasing agent, the complex—they would lease to other black people and before long the complex would be run over with blacks." (Jennings Dep., p. 31). When Ms. Jennings recommended plaintiff be given a second interview, Ms. Evans allegedly responded, "We are not going to hire a black leasing agent." (Jennings Dep., p. 37).

■ Defendants argue that there is no admissible, competent, direct evidence of alleged discriminatory practices at MAQ. As defendants point out, Ms. Jennings pro-

vided a sworn affidavit attached to their Motion for Summary Judgment indicating she was aware of no racially discriminatory policy by M.A.Q. Management, and that any remarks made prior to this affidavit were motivated by the fact she was angry at the time she was fired. (Aff. of Melinda Jennings). While defendants claim there is no sworn statement of Melinda Jennings to the contrary in the record, Ms. Jennings' deposition was taken subsequent to the filing of defendants' Motion for Summary Judgment. In her deposition, Ms. Jennings repeatedly explained that her second affidavit was not meant to and did not retract her original statement. Rather, Ms. Jennings testified that the purpose of that affidavit was to clarify the fact that Vince Murphy had never personally told Ms. Jennings to discriminate, and to explain that Ms. Jennings had never seen a written policy of discrimination. (Jennings Dep., p. 86). Thus, Ms. Jennings' deposition raises the question of fact regarding the existence of direct evidence of discrimination by defendants.

██ Under the *McDonnell Douglas* framework, a defendant rebuts a *prima facie* case of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 803, 93 S.Ct. at 1824–25. However, where the evidence consists of direct testimony that the defendant acted with a discriminatory motive, and the evidence is found credible, the defendant cannot refute this evidence by mere articulation of other reasons for its employment action. Rather, the burden of persuasion then shifts to the employer to *prove* that the same decision would have been reached even absent the presence of the illegal motive. *Mt. Healthy City School District Bd. of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1554 (11th Cir.1990); *Hill v. Metropolitan Rapid Transit Authority*, 841 F.2d at 1539; *Bell v. Birmingham Linen Service*, 715 F.2d at 1557; *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir.1982). The employer must make this showing, that it

would have reached the same decision even if it had not considered the illegitimate factor must be made by a preponderance of the evidence. *Caban–Wheeler*, 904 F.2d at 1554; *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 254, 109 S.Ct. 1775, 1791–92, 1795, 104 L.Ed.2d 268, 289, 293 (1989).

██ In their Reply Brief in Support of Motion for Summary Judgment, defendants claim that plaintiff would not have gotten the leasing consultant position even if she had been white, since experienced applicants were given a preference in hiring. It is true, as defendants note, that a more experienced candidate than plaintiff was selected for the job. Millie Chirinos, the candidate ultimately hired, did not submit her application at the time plaintiff was being considered, however. Since Ms. Chirinos was not hired until a month after plaintiff had filed a charge of race discrimination with the EEOC, the court cannot conclude at this stage that plaintiff would not have been hired prior to that time even if she were not black.

Melinda Jennings testified, and the advertisement defendants placed in the paper stated, that while experience was preferred, it was not necessary. (Jennings Dep., p. 29; Defendants' Exhibit A). Thus, a material issue of fact exists regarding whether defendants have met their burden of persuasion to prove by a preponderance that defendants would not have hired plaintiff despite their use of the proscribed criteria. This issue necessarily involves evaluating the credibility of defendants' reasons for adverse decisions against plaintiff. Questions of motive and intent are particularly inappropriate for summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). A factfinder, therefore, should be given the opportunity to hear plaintiff's claims. Accordingly, defendants' Motion for Summary Judgment on plaintiff's Title VII claim should be DENIED.

### Plaintiff's Claim Under 42 U.S.C. § 1981

██ The *prima facie* requirements under Section 1981 of the Civil Rights Act are

the same as those under Title VII. *Scarlett v. Seaboard Coastline Railroad Company*, 676 F.2d 1043, 1052 (5th Cir.1982). Plaintiff therefore has established a cause of action under Section 1981. Section 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984); *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 383, 102 S.Ct. 3141, 3146, 73 L.Ed.2d 835 (1982). As noted above, a question of fact exists regarding defendants' motivation for its employment decision. Questions of motive and intent are particularly inappropriate for summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. at 473, 82 S.Ct. at 491. Accordingly, defendants' Motion for Summary Judgment on plaintiff's Section 1981 claim should be DENIED.

### Plaintiff's Claim Under 42 U.S.C. § 3606

■ Defendants move for summary judgment on plaintiff's Fair Housing Act claim, stating that "plaintiff represents no class of persons allegedly denied housing in violation of the Fair Housing Amendment to Title VIII of the Civil Rights Act, 42 U.S.C. § 3601, *et seq.* (Brief in Support of Defendants' Motion for Summary Judgment, p. 18). Plaintiff admits she has never alleged that she represents any class of persons, nor has she alleged that she sought housing, other than such housing as was routinely awarded as part of the benefits package for leasing agents.

In Count 3 of her Complaint, plaintiff filed her Fair Housing Act claim pursuant to 42 U.S.C. § 3606, which provides:

> After December 31, 1968, it shall be unlawful to deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership, or participation, on account of race, color, religion, handicap, familial status, or national origin.

As plaintiff notes, it cannot be disputed that plaintiff is a "person" within the meaning of the statute. Plaintiff further argues that defendants in this case are "facilities" which are "relating to the business of ... renting dwellings." Plaintiff's claim therefore is based upon the allegation that, by denying plaintiff access to the leasing consultant position, she was denied access to the business of renting dwellings on account of race.

After a thorough search, the magistrate has found no cases which suggest that Section 3606 does not apply to a private apartment complex or to a company engaged in the managing and leasing of residential apartment projects. Defendants cite no case law regarding the Fair Housing Act; rather, defendants apparently concur with plaintiff's interpretation. Defendants state:

> Assuming that these statutes give the plaintiff a cause of action, the only basis for such a cause of action available to the plaintiff would be her denial of the job of leasing agent on the basis of race. Therefore, the plaintiff must make a successful case of discrimination under Title VII in order to state a cause of action under Fair Housing Amendments.

(Brief in Support of Defendants' Motion for Summary Judgment, pp. 18–19). Accordingly, the magistrate interprets "facility" to include businesses such as defendants. Since plaintiff has successfully established a cause of action regarding defendants' alleged refusal to hire her as leasing consultant on the basis of her race, defendants' Motion for Summary Judgment on plaintiff's Fair Housing Act claims also should be DENIED.

### Rule Eleven Sanctions

Defendants also move for summary judgment in their favor on their Counterclaim. In their Counterclaim, defendants request sanctions under Rule 11 of the Federal Rules of Civil Procedure, arguing that plaintiff knew, or in the exercise of reasonable case should have known, that at the

time her action was filed there was no basis for her claims. Inasmuch as defendants' Motion for Summary Judgment should be denied, defendant's Counterclaim is without merit. Accordingly, this court should decline to impose sanctions, since plaintiff's Complaint is not substantially groundless, frivolous, vexatious, and in bad faith.

SO REPORTED AND RECOMMENDED.