[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10047

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 09, 2010
JOHN LEY
CLERK

D.C. Docket No. 3:08-cv-00620-HLA-HTS

DANIEL DIXON,
MARY SHARON DIXON,

　　　　　　　　　　　　　　　　　　　　Plaintiffs-Appellants,

versus

THE HALLMARK COMPANIES, INC.,
HALLMARK MANAGEMENT, INC.,
CHRISTINA SAUNDERS,
NORINE LEWIS

　　　　　　　　　　　　　　　　　　　　Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 9, 2010)

Before DUBINA, Chief Judge, ANDERSON, Circuit Judge, and COAR,* District
Judge.

_____

*Honorable David H. Coar, United States District Judge for the Northern District of Illinois,
sitting by designation.

COAR, District Judge:

Mary Sharon and Daniel Dixon appeal the district court's order granting summary judgment to their former employer, Hallmark Management, Inc., on their claims of religious discrimination, retaliation, and failure to accommodate religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and retaliation and housing discrimination in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§ 3604(b), 3606, 3617. For the reasons explained below, we vacate and remand the district court's award of summary judgment on the Dixons' Title VII intentional discrimination and failure-to-accommodate claims and affirm the district court's grant of summary judgment on the Dixons' FHA and Title VII retaliation claims.

## I.

Appellants Mary Sharon Dixon and Daniel Dixon, a husband-and-wife team, were respectively the on-site property manager and maintenance technician at Thornwood Terrace Apartments, a rental complex owned by Appellee Hallmark Management, Inc. Previously, the Dixons had worked for Hallmark at two other apartment complexes—Rosemont and Devonshire. As part of their compensation

at Thornwood, the Dixons were permitted to live rent-free in an apartment adjacent to the complex's management office.

The clash between the Dixons' religious beliefs and Hallmark's employment policies began as early as their employment at Rosemont. Ms. Dixon was informed that, under Hallmark's policy, she could not display religious items in the management office. She objected to this policy initially at Rosemont, and later at Thornwood.

As a recipient of federal funds in the form of rental assistance under the United States Department of Agriculture's rural development program, Thornwood is subject to periodic inspections by the USDA. On the date of one such inspection, the Dixons' supervisor, Christina Saunders, visited the rental office. During her visit, she noticed that the Dixons had hung on the wall a 26" by 50" picture of flowers with the words, "Remember the Lilies… Matthew 6:28." With Hallmark's religious-display policy in mind, Saunders asked Ms. Dixon whether "Matthew 6:28" was a Bible citation. Ms. Dixon confirmed that it was. Saunders, in response, directed Ms. Dixon to remove the artwork from the wall. Saunders later testified that she believed that displaying the artwork violated the FHA, and she feared that she could lose her job if Hallmark was found to be in violation of the Act.

Rather than immediately removing the artwork, Ms. Dixon stated that she wanted to talk first with her husband, who was absent from the office at the time. According to Saunders, Ms. Dixon "made it clear that picture was not going to come down" and left the office. *Dixon v. The Hallmark Cos.*, No. 3:08-cv-620-J-25HTS, at *5 (M.D. Fla. Dec. 9, 2009). Once Ms. Dixon left, Saunders called her own supervisor, Norine Cole-Lewis. Cole-Lewis instructed her to remove the picture from the wall herself and to make sure that the Dixons understood the fair housing laws. Saunders complied.

When Ms. Dixon returned to the rental office with her husband, a dispute ensued, and Saunders ultimately fired both Mr. and Ms. Dixon. According to Saunders, Ms. Dixon was angry and asked why the picture was removed, and Mr. Dixon attempted to re-hang it. Mr. Dixon denies this. Saunders testified that she told Mr. Dixon he would be fired if he put the picture back on the wall. Hallmark maintains that the Dixons were fired for insubordination because they argued with Saunders and insisted on re-hanging their artwork. At some point during the dispute, Ms. Dixon retrieved a picture of Jesus from her apartment and held the picture close to Saunders, asking if it offended her. Although the timeline is not entirely clear, it appears that this incident occurred after Ms. Dixon was fired. The Dixons claim that, although Mr. Dixon took no actions regarding the picture and

4

said nothing at all, Saunders terminated him, stating, "You're fired, too. You're too religious." Saunders denies that she made this comment. Regardless, Saunders instructed the Dixons to vacate the building within 72 hours.

The Dixons filed a lawsuit against Hallmark, alleging that Hallmark violated Title VII by intentionally discriminating against them, failing to accommodate their sincerely held religious beliefs, and retaliating against them. The Dixons also asserted claims of retaliation and housing discrimination in violation of the FHA.

Hallmark moved for summary judgment on all of the Dixons' claims, and the court granted Hallmark's motion. The court held that, assuming Saunders in fact said, "You're fired, too. You're too religious," that comment did not constitute direct evidence of discrimination with respect to either Ms. or Mr. Dixon. The court noted that the comment alleged was not "You're fired, too *because* you're too religious" and explained that the context did not support such an interpretation. After rejecting the Dixons' Title VII intentional discrimination and retaliation claims, the court also granted summary judgment on their failure-to-accommodate claim, concluding that it was unclear whether the Dixons held a sincere religious belief regarding the removal of their artwork. Finally, the court rejected the Dixons' FHA claims, concluding that § 3604(b) did not cover the Dixons, and even if § 3606 did, the failure of the Dixons' employment discrimination claim required

5

the dismissal of their housing discrimination claim as well. The Dixons now appeal.

## II.

The Court reviews a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the moving party. *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation and quotation marks omitted).

## III.

A plaintiff in a Title VII case can establish a claim of intentional discrimination by presenting either direct or circumstantial evidence. *See Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). The

Dixons present direct evidence and argue that they have raised a genuine issue of material fact as to whether Hallmark intentionally discriminated against them on the basis of their religious beliefs. We agree. Contrary to the district court's holding, the Dixons' direct evidence is sufficient to carry their intentional discrimination claim past summary judgment.

Direct evidence of discrimination is "evidence that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citation and quotation marks omitted). Under Eleventh Circuit law, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (citations and quotation marks omitted).

The district court held that no reasonable jury could conclude from Saunders's alleged comment, "You're fired, too. You're too religious," that the Dixons were fired because of their religion. In reaching that conclusion, the court placed particular emphasis on its observation that the comment alleged was not "You're fired too *because* you're too religious." *Dixon v. The Hallmark Cos.*, No. 3:08-cv-620-J-25HTS, at *11-12. The court's analysis overlooks Eleventh Circuit precedent characterizing comparable remarks as direct evidence of discrimination.

Most notably, we have held that a management memorandum saying, "Fire Early—he is too old" constitutes direct evidence of discrimination. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also Castle v. Sangamo Weston Inc.*, 837 F.2d 1550, 1558 n. 13 (11th Cir. 1988) (a scrap of paper saying "Fire Rollins—she is too old" is direct evidence of discrimination).

When pressed to distinguish *Earley* and *Castle* from the instant case at oral argument, Hallmark argued broadly that the context for Saunders's alleged comment separates this case from *Earley* and *Castle*. We disagree. If anything, the context further supports the Dixons' position that Saunders's alleged remark is direct evidence of discrimination. The Dixons claim that Saunders, their immediate supervisor, uttered this comment while terminating them. More significantly, they claim that this incident took place on the heels of a dispute that pitted their religious beliefs against Hallmark's policies. Hallmark suggests nothing about the context that removes this case from the reach of *Earley* and *Castle*.

Ultimately, the parties dispute whether Saunders even made the comment at issue, and the district court's analysis should have stopped there. Drawing inferences in favor of the Dixons, as is required at this stage, a reasonable jury could find that Saunders's alleged comment constitutes direct evidence of religious discrimination. Because the Dixons have raised genuine issues of material fact as

8

to whether Hallmark intentionally discriminated against them on the basis of their religious beliefs, we conclude that the district court erred by granting summary judgment on this claim.

IV.

The Dixons next challenge the district court's rejection of their claim that Hallmark violated Title VII by failing to accommodate their sincerely held religious beliefs. To prevail on this claim, the Dixons must establish that (1) they held a bona fide religious belief that conflicted with an employment requirement; (2) they informed Hallmark of that belief; and (3) they were discharged for failing to comply with the conflicting employment requirement. *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007); *Beadle v. Hillsborough County Sheriff's Dep't*, 29 F.3d 589, 592 n.5 (11th Cir. 1994). Once a prima facie case is established, the burden shifts to the employer to "demonstrate that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Morrissette-Brown*, 506 F.3d at 1321 (quoting 42 U.S.C. § 2000e(j)) (internal quotation marks omitted). As the district court correctly noted, there is differing testimony as to whether the Dixons held a sincere religious belief that conflicted with Hallmark's directive to remove their artwork. Despite the court's

9

contrary conclusion, the parties' conflicting testimony raises a genuine issue of material fact as to the first prong of the failure-to-accommodate analysis. The Dixons have presented evidence that they are sincere, committed Christians who oppose efforts to remove God from public places. Determining their credibility on this point is a matter for the jury, not the court.

The Dixons have also satisfied the second prong of their prima facie case. Hallmark knew that the Dixons were dedicated Christians who had previously opposed policies prohibiting the public display of religious items. More importantly, if the jury believes that Saunders told Mr. Dixon he was "too religious" when she fired him, it could reasonably infer that she connected the Dixons' failure to remove the artwork with their religious beliefs. Hallmark argues that the Dixons never expressly told Saunders that they did not want to take down their artwork because they opposed efforts to remove God from public places. However, we conclude that if Saunders was aware of the tension between her order and the Dixons' religious beliefs—and there is ample evidence that she was—her awareness would satisfy the second prong. *See Brown v. Polk County, Iowa*, 61 F.3d 650, 654 (8th Cir. 1995) ("An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the

10

employer's job requirements.'") (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993)); *Hellinger v. Eckerd Corp.*, 67 F.Supp.2d 1359, 1363 (S.D. Fla. 1999) (relying on *Brown* and adding, "It would be hyper-technical . . . to require notice of the Plaintiff's religious beliefs to come only from the Plaintiff."). Although the district court never reached the third prong, the Dixons satisfy this prong as well, given that Saunders fired them for failing to remove their artwork at her command.

As both parties acknowledge, once the Dixons establish a prima facie case, the burden shifts to Hallmark to demonstrate that it cannot reasonably accommodate their religious beliefs without undue hardship. *See* 42 U.S.C. § 2000e(j); *Morrissette-Brown*, 506 F.3d at 1321. Because Title VII does not explicitly define the terms "reasonably accommodate" or "undue hardship," "the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." *Beadle*, 29 F.3d at 592. The district court made no factual findings on these issues once it concluded that the Dixons failed to establish a prima facie case. Because we cannot address the reasonable accommodation and undue hardship issues on the basis of the limited record before us, we vacate and remand the district court's grant of summary judgment on the Dixons' failure-to-accommodate claim.

11

V.

The Dixons next argue that the district court erred by granting summary judgment on their Title VII retaliation claim. To establish a prima facie case of Title VII retaliation, the Dixons must show that (1) they engaged in statutorily protected activity; (2) they suffered a materially adverse employment action; and (3) there was a causal link between the two. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212 (11th Cir. 2008); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

The Dixons argue that Hallmark retaliated against them for their opposition to Hallmark's requirement that the artwork be removed from the manager's office. Specifically, they argue that displaying the artwork was permissible under federal housing law and that the underlying motivation behind the demand to remove it was an improper attempt to cleanse the workplace of all religious references, no matter how benign these references were.

The opposition clause of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter.

12

42 U.S.C. §2000e-3(a). Examples of unlawful employment practices include differentiating compensation and benefits or classifying employees on the basis of race, sex, or religion. 42 U.S.C. §2000e-2(a).

The "unlawful employment practice" that the Dixons claim to have opposed is Hallmark's decision to keep its workplace free of religious symbols. The Dixons claim to have opposed "their supervisor's improper attempt to cleanse the workplace of all religious references," plaintiffs' brief at 36, and "defendants' requirement that artwork containing a Scripture reference be removed from the manager's office." *Id.* at 35.

Even if an employment practice is not as a matter of fact unlawful, a plaintiff can establish a prima facie case of Title VII retaliation "if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. . . . A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (emphasis in original).

The Dixons claim that they had a reasonable belief that the requirement that they remove the artwork from the manager's office was unlawful. They assert that

their objection to this improper request led directly to an adverse employment action, namely, their termination.  We can assume that the Dixons have adduced evidence to show that they *subjectively* believed that Hallmark's policy was an "unlawful employment practice."   They adduced evidence that Ms. Dixon did not comply with the request to remove the artwork from the office because of her belief that the request was unlawful and dishonored God.  The Dixons also state that Saunders improperly attempted to cleanse the workplace of religious symbols. However, in addition to showing that they *subjectively* believed that this was an "unlawful employment practice," the Dixons are also required to demonstrate that there was sufficient evidence to raise a material issue of fact as to the reasonableness of their belief – i.e., that their belief was *objectively* reasonable. The Dixons have called attention to no statutory or case law that can reasonably be believed to prohibit a private employer from keeping its own workplace free of religious references.  Thus, they have failed to satisfy the objective prong required by *Little*.  *Id.* at 960.

The Dixons argue that their extensive tenure working in the rental housing industry, and their history of displaying the artwork throughout that time, convinced them that hanging it in the rental office was not prohibited by the Fair Housing Act.  However, demonstrating that religious symbols in the workplace are

14

not prohibited by law does nothing to further the Dixons' obligation to demonstrate that the law prohibits a private employer from deciding to keep its workplace free of religious symbols, and it does nothing to indicate that the Dixons' subjective belief was *objectively* reasonable. Nor do the Dixons offer any explanation of how or why they might objectively believe that there is some statute or case law that prohibits a private employer from deciding not to display religious symbols on its premises.

Having failed to adduce evidence to create a genuine issue of material fact with respect to the objective prong of their retaliation claim, the Dixons have failed to demonstrate a viable retaliation claim. Accordingly, the district court's grant of summary judgment on this claim was proper.

VI.

The Dixons next challenge the district court's award of summary judgment on their claims of retaliation and housing discrimination under §§ 3604(b), 3606, and 3617 of the Fair Housing Act. Because neither of the Dixons' FHA claims falls within the scope of the FHA, we affirm the district court's grant of summary on these claims.

The Dixons bring their claim for retaliatory housing discrimination under 42 U.S.C. §§ 3604(b) and 3617. Section 3617 provides, in relevant part, that "[i]t

15

shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. In turn, § 3604(b) provides that "[i]t shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

The district court quickly disposed of the Dixons' retaliatory housing discrimination claim, holding that "[d]efendants could not have interfered with Plaintiffs' right to not be discriminated against in the terms, conditions or privileges of the *rental* of a dwelling when it evicted them from their apartment because the manager's apartment was part of their compensation, not a rental." *Dixon v. The Hallmark Cos.*, No. 3:08-cv-620-J-25HTS, at *19 (emphasis in original). That conclusion was incorrect. In fact, the FHA's definition of "to rent" includes "to grant for a consideration the right to occupy premises." 42 U.S.C. § 3602(e). Because Hallmark provided the Dixons with an apartment in exchange for their management and maintenance services, the FHA covers the Dixons' housing arrangement.

16

Nevertheless, the Dixons' retaliation claim fails on other grounds. To establish a claim for retaliatory housing discrimination, the Dixons must assert that Hallmark "coerce[d], intimidate[d], threaten[ed], or interfere[d] with" their exercise of rights granted under § 3604(b). *See* 42 U.S.C. § 3617. The problem with the Dixons' claim is that they have not asserted rights protected by § 3604(b), which prevents discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling." 42 U.S.C. § 3604(b). The Dixons have not explained how § 3604(b) provides a right to hang religious artwork in Hallmark's rental office, which is separate from their personal dwelling. Because we believe that § 3604(b) provides no such right, the Dixon's claim for retaliatory housing discrimination under § 3604(b) must fail.

Alternatively, the Dixons assert a claim for housing discrimination under 42 U.S.C. § 3606. Section 3606, which is entitled "Discrimination in the Provision of Brokerage Services," provides:

> [I]t shall be unlawful to deny any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings, or to discriminate against him in the terms or conditions of such access, membership, or participation, on account of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3606.

17

The Dixons claim that Hallmark's termination of their employment violated the FHA by denying them participation in the business of renting apartments on the basis of religion. To support their argument that § 3606 provides them with a cause of action, the Dixons rely on *Favors v. MAQ Mgmt. Corp.*, 753 F.Supp. 941 (N.D. Ga. 1990), an unpublished district court opinion. The court below concluded that *Favors* is distinguishable, and we agree. In *Favors*, the plaintiff alleged "a kind of 'back door' discrimination wherein Defendants would not necessarily deny housing outright to blacks, but would instead hire only white leasing personnel." *Id.* at 944. The *Favors* defendants apparently adopted this practice with the hope that white leasing consultants would be more reluctant to extend leases to African Americans than would be African-American leasing consultants. *Id.* As the district court properly reasoned, unlike the defendants in *Favors*, Hallmark is not accused of denying housing to a protected class by discriminating against the Dixons. That distinction is especially significant given the intended scope of § 3606. As demonstrated most clearly by its title, § 3606 prevents "Discrimination in the Provision of Brokerage Services." While the management company's failure to hire the plaintiff in *Favors* directly implicated the type of discrimination that § 3606 aims to combat, the Dixons' termination does not. Accordingly, we

conclude that the district court properly granted summary judgment for Hallmark on the Dixons' FHA claims.

## VII.

For the foregoing reasons, the district court's order granting summary judgment for Hallmark is

AFFIRMED, in part, VACATED, in part, and REMANDED for further proceedings consistent with this opinion.