[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14711
Non-Argument Calendar
_____

D.C. Docket No. 4:11-cv-00466-RH-CAS

BYRON UNDERWOOD,

Plaintiff-Appellant,

versus

DEPARTMENT OF FINANCIAL
SERVICES STATE OF FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the  Northern District of Florida
_____

(April 25, 2013)

Before CARNES, BARKETT, and FAY, Circuit Judges.

PER CURIAM:

Byron Underwood appeals the district court's grant of summary judgment in

favor of the Florida Department of Financial Services ("DFS"), his former

employer, in his counseled employment action, alleging retaliation pursuant to

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3; 42 U.S.C. § 1981(a); and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(7).  On appeal, Underwood argues that the plain language of Title VII and the Supreme Court's decision in *Thompson v. N. Am. Stainless, LP*, 562 U.S. ___, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011), permit him to file a retaliation claim against the DFS for firing him because his wife had filed a discrimination charge against a different employer.  For the reasons set forth below, we affirm the district court's grant of summary judgment to the DFS.

## I.

In 2011, Underwood filed an amended complaint against the DFS, his former employer, alleging violations of Title VII, 42 U.S.C. § 1981, and the FCRA.  Specifically, he alleged that he worked for the DFS from December 23, 2009, until his termination on March 15, 2010.  Before his employment with the DFS, Underwood worked for the Florida Department of Health ("DOH") for approximately 14 years.  During his employment with the DFS, Underwood's wife, Linda Underwood ("Linda"), had filed a "gender, age[,] and retaliation action" against the DOH, where she had also been employed.  Approximately one month before Underwood's termination from the DFS, Linda resolved her discrimination case.

2

Further, the complaint alleged that Dell Harris, a DFS employee, acted on behalf of the DFS's Division of Risk Management in connection with the mediation and resolution of Linda's employment complaint against the DOH, and he had knowledge of Underwood's relationship with Linda. Additionally, Eric Whitehead, who Underwood reported to during his employment with the DFS, had previously worked for the DOH and had direct knowledge of Linda's complaint. At the DFS, Whitehead was supervised by Ross Nobles, who controlled the state funds that were ultimately used to resolve Linda's complaint. Additionally, Nobles was supervised by Linda Keen and, like Whitehead, Keen had been employed with the DOH while Linda's discrimination claims were pending. Keen terminated Underwood shortly after Linda's claims against the DOH were resolved and, when Underwood asked Keen for an explanation, she responded that Underwood was "no longer a good fit." Underwood asserted that "Harris, Whitehead, Nobles and/or Keen caused [his] termination after [Linda's] claims against [the] DOH were resolved." Further, he was terminated in retaliation for his affiliation with his wife and for "her participation in a protected activity." In sum, Underwood asserted that these facts supported a cause of action for unlawful retaliation against the DFS. Further, Underwood is a member of a protected class due to his affiliation with his wife, who engaged in a protected activity, and "because he was the victim of retaliation thereafter."

3

The DFS filed a motion for summary judgment, arguing that Underwood's retaliation claim attempted to "impermissibly expand" the scope of Title VII's anti-retaliation provision and the Supreme Court's recent decision in *Thompson*. According to the DFS, *Thompson* held that an employee could bring a third party retaliation claim under Title VII on the basis of harm that he suffered in retaliation for a protected activity in which his co-worker, with whom he had a close personal relationship, had engaged. Here, however, Underwood and Linda, his spouse, were not co-workers but, rather, they were employed by two different employers, the DFS and the DOH. Thus, even assuming that Underwood's allegations were true, the DFS was entitled to summary judgment because (1) the DFS did not engage in an unlawful employment practice by firing Underwood; and (2) even if it did, Underwood lacks standing to maintain this action.

In response, Underwood argued that, under *Thompson*, the DFS can be liable for the adverse action that he suffered because he fell within "zone of interests" that Title VII is intended to protect based on his wife's protected activity. Similarly to the plaintiff in *Thompson*, Underwood was an intended target of the DFS's actions. Under the "broad sweep" of *Burlington Northern & Santa Fe Ry, Co.. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) and *Thompson*, Underwood, as the husband of a party who complained of discrimination, is "a person aggrieved" with standing to bring a retaliation claim.

4

Contrary to the DFS's argument, *Thompson* does not require a showing that "an employee of the defendant has engaged in protected activity." Instead, Title VII's anti-retaliation provision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Thus, third-party reprisals, like Underwood's termination based on his wife's conduct, are explicitly recognized in *Thompson*.

The district court granted the DFS's motion for summary judgment. The court noted that the case presented two issues: (1) whether the DOH and the DFS, two state agencies, are properly treated as the same employer for purposes of Title VII's anti-retaliation provision; and (2) if not, whether the anti-retaliation provision prohibits an employer from taking action against an employee because the employee's spouse—who did not work for the same employer—made a charge of discrimination against a "*different* employer." For summary judgment purposes, the court credited Underwood's allegation that the DFS fired him because his wife, Linda, had asserted a discrimination charge against the DOH. As to the first issue, the court found that Florida law treats the DFS and the DOH as separate agencies, each with its own workforce and employees, and each with the capacity to be sued. Further, partly for this reason, the law of this Circuit treats these state agencies as separate employers for Title VII purposes. Specifically, this Court has adopted a presumption "that governmental subdivisions denominated as separate and distinct

5

under state law should not be aggregated for purposes of Title VII." This presumption may only be rebutted by evidence that a governmental entity was structured for the purpose of evading federal employment law. Here, the DFS and the DOH are "large, wholly separate agencies that could properly be treated as one only if the law required all state agencies to be treated as one," and there is no such requirement. Thus, the DFS and the DOH were separate employers.

As to the second issue, the court found that the analysis of whether Title VII applies in these circumstances "begins and ends with the statutory language." Although a review of the statutory text favored the plaintiff in *Thompson*, it produces a different outcome in this case. In *Thompson*, the employer retaliated against one of its own employees—Thompson's fiancée—based on her charge of discrimination. However, in this case, the DFS did not employ the person who asserted the charge of discrimination and, although the DFS employed Underwood, he had asserted no charge of discrimination. Further, the court stated,

> [T]here is simply no way to bring this case within the anti-retaliation provision's text[]. The text makes it an 'unlawful employment practice' for an employer to discriminate against any of 'his'—the employer's own—employees, because 'he'—the employee—has complained of discrimination. Firing an employee's fiancé or spouse can be retaliation against the employee, as *Thompson* makes clear. A plaintiff whose fiancé or spouse suffers retaliation can be a 'person aggrieved,' as *Thompson* makes clear. But unless the plaintiff's own employer has committed an 'unlawful employment practice,' the plaintiff has no claim under the Title VII anti-retaliation provision. In *Thompson*[,] the plaintiff's own employer had committed an 'unlawful employment practice.' Here, the plaintiff's employer did not.

6

Thus, the DFS was entitled to summary judgment.

While the court stated that its conclusion did not mean that an employer "*should* take an action against an employee because a relative asserted a discrimination charge against an employer," it noted that "Title VII does not reach all evils in employment." In granting summary judgment, the court stated it that it had followed the instruction of *Thompson* and other cases, that courts should apply the "clear statutory text." For these reasons, the district court granted summary judgment to the DFS.

## II.

We review a district court's grant of summary judgment *de novo*, "applying the same legal standards as the district court." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*). "[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact." *Id.* (quotation omitted). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Id.* (quotation omitted). In making this determination, we "make all reasonable inferences in favor of the" nonmoving party. *Id.* (quotation omitted).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because he has opposed

7

any practice made an unlawful employment practice by [Title VII], or because he has made a charge" under Title VII. 42 U.S.C. § 2000e–3(a); *see Thompson*, 562 U.S. at ___, 131 S.Ct. at 867. The Supreme Court has interpreted Title VII's anti-retaliation provision to provide broad protection from retaliation. *Burlington Northern*, 548 U.S. at 67, 126 S.Ct. at 2414. To establish a *prima facie* case of retaliation, a plaintiff may show that he engaged in protected activity, he suffered a materially adverse action, and a causal connection existed between the activity and the adverse action. *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010).

As both parties rely heavily on *Thompson*, a discussion of the facts and circumstances of that case is helpful in resolving the instant appeal. In *Thompson*, the plaintiff, Eric Thompson, and his fiancée, Miriam Regalado, were both employees of North American Stainless ("NAS"). *Thompson*, 562 U.S. at __, 131 S.Ct. at 867. In February 2003, the EEOC notified NAS that Regalado had filed a discrimination charge and, three weeks later, NAS fired Thompson. *Id.* Subsequently, Thompson sued NAS under Title VII, claiming that it had fired him in order to retaliate against Regalado for filing her EEOC charge. *Id.* The district court granted summary judgment to NAS, finding that Title VII did not permit third party retaliation claims. *Id.* The Supreme Court disagreed, holding that Thompson could maintain a cause of action under Title VII. *Id.* at __, 131 S.Ct. at

8

867-70.  Under the procedural posture of the case, the Court was required to assume that NAS fired Thompson in retaliation against Regalado for filing a discrimination charge.  *Id.* at __, 131 S.Ct. at 867.  The Court explained that the case presented two questions: (1) whether NAS's firing of Thompson constituted unlawful retaliation; and (2) if so, whether Title VII grants Thompson a cause of action.  *Id.*

As to the first issue, the Court, relying on *Burlington*, explained that Title VII's anti-retaliation provision, in contrast to its substantive provision, must be construed to cover a broad range of employer conduct.  *Id.* at __, 131 S.Ct. at 867-68.  Further, the Court concluded that NAS's firing of Thompson violated Title VII.  Specifically, the Court explained that Title VII's anti-retaliation provision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at __, 131 S.Ct. at 868.  The Court concluded that it was "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."  *Id.*  Moreover, the Court concluded that there was no textual basis for making an exception to that provision for third-party reprisals.  *Id.*  The Court also declined to identify a "fixed class of relationships for which third-party reprisals are unlawful."  *Id.*  Specifically, the Court stated that the "firing of a close family

9

member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so." *Id.*

Next, the Court addressed whether Thompson had standing to sue NAS for its alleged Title VII violation. *Id.* at __, 131 S.Ct. at 869. In holding that Thompson had standing, the Court concluded that Title VII incorporates the "zone of interests" test, which denies a right of review 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id*. at ___, 131 S.Ct. at 869-70. Ultimately, the Court concluded that Thompson fell within the zone of interests protected by Title VII, *i.e*., he was a person aggrieved with standing to sue because (1) he was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' actions, and (2) he was not an accidental victim of the retaliation, as "injuring him was the employer's intended means of harming Regalado." *Id.* at ___, 131 S.Ct. at 870. Specifically, "[h]urting [Thompson] was the unlawful act by which the employer punished [Regalado]." *Id.*

As an initial matter, Underwood asserts that, under *Thompson*, he has standing to sue the DFS because, as Linda's husband, he is within the "zone of interests" sought to be protected under Title VII. However, in granting summary judgment to the DFS, the district court did not reach the issue of whether

10

Underwood had standing to sue because it concluded that, unlike the plaintiff in *Thompson*, Underwood could not show that the DFS had engaged in an "unlawful employment action."  For the reasons discussed below, the district court's conclusion was correct, and we need not reach the issue of whether Underwood has standing to bring a retaliation claim.

Additionally, before addressing whether the DFS had engaged in an unlawful employment action, the district court found that, for purposes of Title VII, the DFS and the DOH were separate employers.  On appeal, Underwood discusses the relationship between the DFS and the DOH, but he argues that such a "link" or "special relationship" is not required for his retaliation claim to proceed. Instead, he asserts that the relationship between the two employers is relevant to whether he has demonstrated the causal connection prong of his *prima facie* case. Regardless, Underwood does not explicitly argue that the DFS and the DOH should be considered to be the same employer for purposes of analyzing his retaliation claim.  Moreover, he does not argue that the district court erred in finding that the DFS and the DOH, as different state agencies, are different employers under Title VII.  Thus, to the extent that Underwood raised this argument below, he has abandoned it on appeal, and we will not consider it.  *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1293 (11th Cir.

11

2009) (explaining that an appellant abandons a claim or argument that is not briefed on appeal and we will not address it on the merits).

The district court did not err in granting summary judgment to the DFS. On appeal, Underwood asserts that the district court erred in finding that the retaliating employer must be the same as the employer that engaged in the underlying discriminatory conduct. However, the district court did not reject his retaliation claim only because the retaliating employer (the DFS) was not the same as the employer that Linda filed her discrimination charge against (the DOH). Instead, the district court's found that Title VII's anti-retaliation provision did not apply because the DFS did not retaliate against one of its own employees based on that employee's protected conduct. Contrary to Underwood's arguments, *Thompson* is distinguishable from the instant case. In *Thompson,* the plaintiff (Thompson) alleged that NAS fired him in retaliation against his fiancée (Regalado), who was his coworker and who had engaged in a protected act by filing a discrimination charge against NAS. *See Thompson*, 562 U.S. at ___, 131 S.Ct. at 867. Thus, the third party retaliation claim was that NAS, the employer, retaliated against its own employee—the fiancée—based on her protected act and that NAS did so by firing another employee—the plaintiff—with whom she had a close personal relationship. *See id.* Here, Underwood has not asserted such a third party retaliation claim because he asserts that his employer, the DFS, retaliated against

*him*, not his wife, and he concedes that he did not engage in protected conduct.  In other words, unlike in *Thompson*, Underwood did not allege that the defendant employer (the DFS) fired him as a means of harming or retaliating against Linda, the individual who engaged in protected conduct.  *See Thompson*, 562 U.S. at ___, 131 S.Ct. at 867-70.

Although Title VII's retaliation clause covers a broad range of employer conduct, the plain language of § 2000e-3 requires that the retaliatory action must be against an employee who engaged in protected conduct.  *See* 42 U.S.C. § 2000e-3(a).  Under *Thompson*, an employer can retaliate against such an employee by firing someone with whom the employee has a close personal relationship.  *See Thompson*, 562 U.S. at ___, 131 S.Ct. at 867-68.  However, as discussed above, Underwood did not allege that his employer (the DFS) retaliated against the same employee who filed the underlying discrimination charge (Linda).  Presumably, Underwood could not have asserted such a claim because Linda was not a DFS employee.  Regardless, Underwood has not identified, and research does not reveal, any binding authority suggesting that, under Title VII, an employer can unlawfully retaliate against one of its own employees, who did not engage in protected conduct, because that employee's spouse, who was a non-employee, filed a discrimination charge against a different employer.

For the foregoing reasons, we affirm the grant of summary judgment.

13

**AFFIRMED.**