[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12984
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00255-JES-UAM

EDWARD LEE GILLIAM,

Plaintiff-Appellant,

versus

U.S. DEPARTMENT OF VETERANS AFFAIRS,
ROBERT L. WILKIE, JR.,
Secretary,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 31, 2020)

Before MARTIN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Edward Gilliam, pro se, appeals the district court's dismissal with prejudice of his third amended complaint alleging employment discrimination and retaliation by his former employer, the United States Department of Veterans Affairs, and the denials of his three motions to reconsider the dismissal. After a careful review of the record and the parties' briefs, we affirm.

## I.

Gilliam, a Protestant Caucasian male, was employed by the VA as a police officer at an outpatient clinic. According to Gilliam, his troubles with the VA began in late 2011 after police chief Robert Shogren became aware of Gilliam's romantic relationship with Lizabeth Marsh, who worked as a medical support assistant at the clinic. Marsh's then-husband had discovered text messages between Gilliam and Marsh and complained to the VA that Gilliam and Marsh were having an affair and were having sex at the clinic. Rather than confront him about these allegations, Gilliam says, Shogren secretly told Gilliam's supervisors that Gilliam was having an adulterous affair with Marsh and encouraged them to build a "paper trail" against him so that they could fire him.

Over the next several months, Gilliam was written up or counseled by his supervisors for multiple incidents, most—but not all—involving his contact with Marsh at work. Gilliam believed that he was being harassed and requested informal counseling with an Equal Employment Opportunity Commission

2

counselor.  In September 2012, Gilliam and Shogren participated in a mediation of Gilliam's EEOC concerns.  The mediation was unsuccessful, and a few days later, Shogren notified Gilliam that he proposed removing him from service based on four charges of misconduct: (1) endangering the safety of one of his supervisors, Sergeant Brad Slam, by placing Sgt. Slam in a chokehold on two separate occasions in June and July 2012; (2) engaging in conduct unbecoming a police officer by yelling and using profanity during a verbal altercation with Marsh at the clinic during Gilliam's scheduled work hours in April 2012; (3) failing to follow the instructions of one of his supervisors to limit or eliminate his social interaction with Marsh during working hours (by kissing her in the office hallway in March 2012, engaging in a loud argument with her at the clinic in April 2012, and meeting her at her workstation and leaving her work area with her in July 2012), and not to enter a certain equipment room at the clinic without prior permission; and (4) engaging in inappropriate conduct in the workplace by having sex with Marsh at the clinic during Gilliam's duty hours in November 2011.

Gilliam submitted a written response to the notice of proposed removal, and he met with the director of the Bay Pines VA Healthcare System, Suzanne Klinker, to respond orally.  He denied the charge that he had had sex with Marsh at the clinic, and he argued that the other charges were exaggerated.  He admitted the other alleged conduct but he claimed that (1) the chokeholds were playful and

3

harmless training demonstrations; (2) he thought his argument with Marsh was private, and he quit yelling and left as soon as a supervisor asked him to lower his voice; (3) his contact with Marsh was during her lunch hour or breaks, which he thought was permitted; and (4) he only entered the prohibited equipment room to put his police radio on the charger that was kept there. Klinker sustained the charges against Gilliam and fired him.

Gilliam appealed his termination to the Merit Systems Protection Board (MSPB) and the EEOC, alleging Title VII discrimination, harassment, and retaliation for his informal EEOC complaint. The MSPB decided that the VA's removal of Gilliam was reasonable under the circumstances and that Gilliam failed to prove that the decision was motivated by discrimination, and the EEOC upheld the MSPB's final order. Gilliam then filed a complaint in federal court alleging that the VA had discriminated against him on the basis of his national origin, sex, religion, and marital status, and retaliated against him because he reported the discrimination to the EEOC. Gilliam also alleged that the VA violated his Fourth Amendment rights by coercing Marsh's husband to provide the text messages that he had secretly retrieved from Marsh's phone.

In reviewing Gilliam's motion to proceed in forma pauperis, the magistrate judge determined that Gilliam's complaint did not meet the standards of Rule 8 of the Federal Rules of Civil Procedure because it contained only vague, conclusory,

or irrelevant statements.  The magistrate judge recommended that the district court direct Gilliam to file an amended complaint.  The district court adopted the magistrate judge's recommendation and dismissed Gilliam's initial complaint without prejudice, stating that it would permit Gilliam to file an amended complaint that corrected the deficiencies identified by the magistrate judge.

Gilliam proceeded to file three amended complaints, each of which restated his claims for discrimination and retaliation.  The district court dismissed the first two amended complaints without prejudice, each time explaining the deficiencies in Gilliam's allegations in detail.  In its order dismissing Gilliam's second amended complaint, the court noted that Gilliam still had not corrected the previously identified pleading deficiencies, encouraged him to consult a website with resources for pro se litigants, and warned him that he would not be given any additional opportunities to file a complaint that stated a viable claim in compliance with the federal rules.

In his third amended complaint, Gilliam alleged that Shogren had created a hostile work environment (composed of repeated disciplinary actions for minor or nonexistent infractions) based on Gilliam's adulterous relationship with Marsh, which allegedly offended Shogren's religious beliefs, and based on Gilliam's race, color, sex, and national origin.  He also alleged that Shogren was "infuriated" by Gilliam's contact with the EEOC and issued the proposed removal in retaliation.

He alleged that Klinker's decision to fire him was based on his failure to adhere to her Roman Catholic religious beliefs (by committing adultery with Marsh and using profanity during his workplace argument with Marsh). And he alleged that the VA violated his Fourth Amendment rights when two of his supervisors coerced Marsh's husband into giving them the text messages that Mr. Marsh had found by breaking into Marsh's cellphone without her permission.

The district court granted the VA's motion to dismiss Gilliam's third amended complaint, finding that Gilliam had failed to state plausible claims for discrimination or retaliation and that his Fourth Amendment claim was barred by sovereign immunity. The court determined that permitting Gilliam to amend his complaint a fourth time would be futile, and it therefore dismissed the third amended complaint with prejudice.

Gilliam filed a series of motions challenging the dismissal, arguing that the court had overlooked or ignored his arguments and evidence supporting his claims. The district court considered each motion in turn, construed them as motions for reconsideration, and denied them because Gilliam had failed to identify a clear error or need to prevent manifest injustice that would warrant reconsideration.

Gilliam filed a pro se notice of appeal from the denial of his third motion for reconsideration, which we read liberally to encompass the dismissal of his third amended complaint as well as the orders denying all three of his motions for

reconsideration.  On appeal, Gilliam argues that the district court erred in dismissing his Title VII retaliation claim and his Fourth Amendment claim and abused its discretion in denying his motions for reconsideration with respect to those claims.  He makes no argument regarding the dismissal of his discrimination and hostile-work-environment claims, and we therefore deem those claims abandoned.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## II.

We review the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim de novo, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  We review a district court's ruling on a motion for reconsideration for an abuse of discretion.  *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010).

## III.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And to state a plausible claim for relief, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[C]onclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### A.

The federal-sector provision of Title VII of the Civil Rights Act provides that employment decisions by federal agencies "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  This provision extends to federal employees the same protections against discrimination and retaliation that are provided to private-sector employees.  *See Porter v. Adams*, 639 F.2d 273, 277–78 (5th Cir. 1981).[1]

In his third amended complaint, Gilliam alleged that his informal contact with the EEOC infuriated Shogren and was the real reason that Shogren recommended that he be removed from service.  To succeed on his retaliation claim, Gilliam would be required to show, at a minimum, that he engaged in protected activity, he suffered a materially adverse action, and a causal connection existed between the activity and the adverse action.  *Dixon v. The Hallmark Cos.*, 627 F.3d 849, 856 (11th Cir. 2010).  Gilliam's EEOC contact was protected activity, and his termination was undoubtedly an adverse employment action.  But

---

[1] We rely on decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981 as binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Gilliam has not alleged facts plausibly suggesting a causal relation between the two.

"To show causation, a plaintiff in a retaliation case need prove only that retaliatory animus was one factor in the adverse employment decision." *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010). And we construe the element of causation in a retaliation case broadly, "so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (citation omitted). In his complaint, Gilliam alleged that (1) Shogren found out about his contact with the EEOC on the day that he made the contact (June 15, 2012) or soon after, (2) the VA paid a million dollars to settle a lawsuit filed by other police officers alleging that Shogren retaliated against them for engaging in protected conduct, and (3) Marsh, a Hispanic female who did not contact the EEOC, was not fired and received only a three-day suspension. These allegations do not support an inference that Shogren's recommendation to fire Gilliam was related to Gilliam's contact with the EEOC.

First, to the extent that Gilliam seeks to establish a causal link by pointing out that Shogren's recommendation to fire him came after his EEOC contact, the lapse of three months between Shogren's alleged discovery of his statutorily protected expression and the adverse employment action is too long to permit an

inference of causation based on temporal proximity alone. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("temporal proximity must be 'very close'" to provide sufficient evidence of causality (citation omitted)); *Brown*, 597 F.3d at 1182 (three-month gap is not close enough); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (same).

Second, the fact that other VA employees accused Shogren of retaliation and the VA paid to settle those claims says nothing about whether Shogren acted with retaliatory intent in Gilliam's case. Gilliam argues that the VA's settlement of other retaliation claims constituted an admission that VA managers in the region fostered a "pattern, practice, and culture" of retaliation, and that because he used the complaint from the settled lawsuit as a guide in preparing his own complaint, the VA should have to settle his claims too.

One obvious flaw in Gilliam's reasoning is his premise that the settlement of a lawsuit proves liability for the plaintiffs' claims. Not so. The mere fact of a settlement shows only that the parties to the lawsuit reached an agreement; such agreements do not necessarily incorporate—and often expressly disclaim—an admission of fault by the defendant. So Gilliam's statement that the VA settled retaliation claims brought by other police officers in a different lawsuit, without more, did not allege facts raising his right to relief "above the speculative level." *Twombly*, 550 U.S. at 555.

And Gilliam alleged nothing more than that other officers made retaliation claims and the VA settled those claims; although he contends that the lawsuit showed that VA management was hostile toward employees who contacted the EEOC, his complaint contained no factual allegations regarding Shogren's alleged retaliatory conduct toward the plaintiffs in the referenced lawsuit. More importantly, Gilliam failed to allege any facts supporting an inference that Shogren acted with retaliatory intent in *his* case. Where causal relation evidence is "wholly generalized," it is "plainly insufficient to establish liability without something more." *Brown*, 597 F.3d at 1182–83.

And third, the fact that Marsh was disciplined less harshly than Gilliam does not show that his EEOC contact played a role in his termination because Marsh is not a valid comparator. We have explained, in discussing claims for race and gender discrimination, that because "[d]iscrimination consists of treating like cases differently," the "converse, of course, is also true: Treating different cases differently is not discriminatory, let alone intentionally so." *Lewis v. City of Union City*, 918 F.3d 1213, 1222–23 (11th Cir. 2019) (en banc) (alteration in original) (emphasis omitted) (citation omitted). The analysis in *Lewis* applies equally to Gilliam's attempt to use Marsh as a comparator in support of his retaliation claim—the difference in discipline does not suggest that Gilliam's EEOC contact was the reason for his termination because, based on the allegations in Gilliam's

11

complaint, Marsh was not "similarly situated in all material respects" to Gilliam. *Id.* at 1218.

For starters, Marsh had a different job—she was not a police officer, and might reasonably be held to different standards than Gilliam, who was. Gilliam was also charged with several different acts of misconduct that did not apply to Marsh, including assaulting one of his superiors, engaging in conduct unbecoming a police officer, and disobeying the instructions of a superior officer. Moreover, Marsh worked in a different department and had different supervisors, and a different decisionmaker determined her discipline. The fact that Marsh's supervisors treated Marsh more leniently does not support an inference that Shogren acted with retaliatory intent when he decided that Gilliam should be fired.

## B.

Gilliam also attempted to state a claim against the VA for an alleged violation of his Fourth Amendment rights. His Fourth Amendment claim was based on his assertion that Mr. Marsh violated his wife's privacy by "breaking and entering" her cell phone to obtain text messages between Gilliam and Marsh, and that the VA later coerced Mr. Marsh into providing the text messages as evidence that Gilliam and Marsh had had sex on VA property. The district court expressed doubts regarding the merits of this claim but concluded that it lacked jurisdiction to reach the merits in any event. We agree.

12

Gilliam sued the VA through its Secretary (in his official capacity), seeking money damages for alleged violations of Title VII and the Fourth Amendment. The doctrine of sovereign immunity presumptively "shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Congress has the power to waive this immunity and consent to suit, but such waivers must be explicit. *In re Custom Contractors, LLC*, 745 F.3d 1342, 1347 (11th Cir. 2014). Where there is no express waiver, a "jurisdictional bar" exists, and courts have no power to proceed on a claim asserted against the federal government or one of its agencies. *Id.*; *see Meyer*, 510 U.S. at 475.

Although Congress has waived immunity for Title VII claims asserted against government agencies like the VA, *see* 42 U.S.C. § 2000e-16, it has not done so for claims against the VA seeking money damages for alleged Fourth Amendment violations. Gilliam alleged in his third amended complaint that Congress had waived sovereign immunity for tort claims like his through the Federal Tort Claims Act (FTCA). It is well established, however, that claims for constitutional torts are not cognizable under the FTCA. *See Meyer*, 510 U.S. at 477–78. And while Gilliam also alleged that sovereign immunity could not shield individual federal agents from suit for constitutional violations, he failed to name the individuals who allegedly violated his constitutional rights as defendants in his lawsuit. *See id.* at 484–86 (while *Bivens v. Six Unknown Named Agents of the Fed.*

13

*Bureau of Narcotics*, 403 U.S. 388 (1971), may provide a mechanism to sue individual federal *agents* for their constitutional violations, it does not provide a cause of action against federal *agencies*).  Accordingly, the district court did not err in dismissing Gilliam's Fourth Amendment claim against the VA.

IV.

We turn now to Gilliam's motions for reconsideration of the dismissal of his third amended complaint.  Rule 59(e) of the Federal Rules of Civil Procedure "enables a party to request that a district court reconsider a just-issued judgment." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020).  A district court may only grant a motion for reconsideration under Rule 59(e) on the grounds of "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007).

In each of his motions, Gilliam argued that the district court had ignored, overlooked, or misunderstood the evidence supporting his claims.  As relevant to this appeal, Gilliam argued that the district court failed to realize that the misconduct charges against him arose in an environment of hostility created by Mr. Marsh's allegations that Gilliam and Marsh had sex on VA property and Shogren's failure to inform Gilliam of those allegations for several months.  Because the misconduct charges were all tainted by Mr. Marsh's false and inflammatory allegations, Gilliam argued, they could not serve as the reason for his termination,

14

which in turn showed that retaliation was the real reason.  He also argued that the district court misunderstood his reference to the VA's settlement of the retaliation suit by other police officers as an attempt to name comparators for his discrimination claim.  The settlement, Gilliam insisted, was indisputable proof that a pattern and culture of retaliation existed throughout the VA's regional healthcare system, including the clinic where Gilliam worked.

The district court denied the motions, explaining again that Gilliam's factual allegations were insufficient to state a viable claim for relief, and concluding for each motion that Gilliam had failed to show that reconsideration was warranted by a change in the law, the discovery of new evidence, clear error by the court, or the need to prevent manifest injustice.  The district court did not abuse its discretion in declining to reconsider its judgment.  Gilliam's motions for reconsideration, rather than introducing newly-discovered evidence or showing clear factual or legal error in the court's judgment, merely restated the allegations from his earlier pleadings—allegations that the district court addressed in its order dismissing Gilliam's complaint.  "A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" *Richardson*, 598 F.3d at 740 (citation omitted).

15

V.

The district court committed no error in dismissing Gilliam's third amended complaint for failure to state a claim. Gilliam's complaint, liberally construed, failed to allege facts that would support a plausible claim that Gilliam was entitled to relief. Moreover, because an additional amendment would have been futile, the district court was under no obligation to provide Gilliam another opportunity to amend before dismissing the complaint. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015). And because Gilliam's motions for reconsideration failed to present newly discovered evidence or show that the district court committed any manifest factual or legal error, the district court did not abuse its discretion in denying those motions. We therefore affirm the dismissal of Gilliam's third amended complaint and the denials of his motions for reconsideration.

**AFFIRMED.**

MARTIN, Circuit Judge, concurring in the judgment:

I agree with the majority's decision to affirm the District Court's dismissal of Mr. Gilliam's third amended complaint. However, I write separately to highlight what I believe is the majority's mistaken characterization of our precedent governing what evidence is required to establish causation in a retaliation claim.

The majority cites Brown v. Alabama Department of Transportation, 597 F.3d 1160, 1182 (11th Cir. 2010), and Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007), for the rule that three months between an employee's protected conduct and his termination is "not close enough" a time period from which we can infer causation. Maj. Op. at 9–10. True, we held in Thomas that "without more" evidence, three months is not enough evidence from which a reasonable jury could find a causal connection between the employee's protected activity and her termination. 581 F.3d at 1364. And in Brown, another case with a three-month gap between the protected activity and the adverse employment action, we explained that "this is not a case where temporal proximity alone is sufficient to establish an inference of retaliation." 597 F.3d at 1182. But it is important to make clear that these cases do not stand for the proposition that a three-month gap can never be "close enough." See Maj. Op. at 9–10. Rather, they

17

simply say that where a plaintiff is relying <u>only</u> on the fact of temporal proximity, a three-month timeframe does not provide an inference of causation.

The majority opinion's mistaken characterization of the holdings in <u>Brown</u> and <u>Thomas</u> also seems to oversimplify the allegations made by Mr. Gilliam.  In his case, like the plaintiff in <u>Brown</u>, Mr. Gilliam relies on more than timing alone to show causation.  <u>See</u> 597 F.3d at 1182–83 (explaining that temporal proximity evidence combined with testimony of an interaction Ms. Brown had with her supervisor was insufficient to show causation).  Although the majority appears to recognize as much,[1] it also seems to evaluate Mr. Gilliam's temporal proximity evidence in a vacuum.  But I am mindful that Mr. Gilliam has directed us to additional causation evidence, such that we may not properly characterize his case as one based on "temporal proximity alone." <u>Id.</u> at 9–10.

For these reasons I concur only in the judgment reached by the majority.

---

[1] The majority opinion separately discusses the other evidence to which Mr. Gilliam points: the facts that the VA settled other employees' retaliation claims and Ms. Marsh was disciplined less harshly.  <u>See</u> Maj. Op. at 10–11.

18